```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION


161 PERDIDO VENTURES, L.L.C.,   :
                                :
     Plaintiff,                 :
                                :
v.                              :    CIVIL ACTION 06-0878-M
                                :
SWERVO DEVELOPMENT CORPORATION, :
                                :
     Defendant.                 :
```

MEMORANDUM OPINION AND ORDER

This action comes before the Court on Defendant Swervo Development Corporation's (hereinafter *Swervo*) Motion for Summary Judgment (Docs. 51-53). Jurisdiction has been invoked in this Court on the basis of diversity of citizenship between the parties (Doc. 1). *See* 28 U.S.C. § 1332. The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 8). After consideration, Swervo's motion is **GRANTED** and this action is **DISMISSED**.

The facts of this action are as follows. Plaintiff 161 Perdido Ventures, L.L.C. (hereinafter *161 Perdido*) entered into a Purchase Agreement (hereinafter *Purchase Agreement*), in May 2004, to sell a parcel of real property in Baldwin County, Alabama[1] to

---

[1]As there is no dispute that the parcel of land in question is in Baldwin County, Alabama, it is apparent that this Court would have had original jurisdiction over this action. 28 U.S.C. § 81(c)(2). The

Swervo with closing to take place on September 10, 2004 (*see* Doc. 52, Exhibit A). That Purchase Agreement was not consummated as contemplated.[2]

A copy of the Purchase Agreement was filed with the Baldwin County Circuit Court on June 21, 2004 (Doc. 52, Exhibit S). On August 11, 2004, Plaintiff sent a letter to Defendant demanding that Swervo withdraw the recorded Purchase Agreement from the Baldwin County Probate records (Doc. 55, Exhibit p. 32). Defendant responded, in a letter dated six days later, that it would not withdraw the recorded document and that it intended to "enforce [the Purchase Agreement] to the full extent of the law" (Doc. 55, Exhibit p. 33).

Even though the anticipated closing did not occur, the Parties continued to negotiate the sale of the property. A letter, written by Defendant's President, dated March 10, 2005, indicated Swervo's desire to purchase the property although he had "a few concerns" with the proposed amendment to the Purchase

---

Court further notes that Plaintiff has not challenged Defendant's removal of this action to this Court.

[2] The Purchase Agreement was not consummated because 161 Perdido did not have title to the property. Evidence of this comes in the way of an Order of Final Judgment, dated March 29, 2006, by Baldwin County Circuit Judge Reid who held that an agreement between 161 Perdido and the Oswalt Family for the sale and purchase of land—the same land that is the subject of this dispute—was null and void (Doc. 52, Exhibit D). In deposition, James R. Owen, Jr., testifying for Plaintiff, confirmed that 161 Perdido did not have title to the property on or before September 10, 2004, the anticipated closing date; Owens further testified that Plaintiff has never actually held title to the property (Doc. 52, Exhibit B, p. 24).

Agreement; he also indicated his understanding that Plaintiff did not yet have clear title to the property (Doc. 52, Exhibit H). The record reveals e-mails between the Parties, following Swervo's letter, through April 18, 2006, in which negotiations continued (Docs. 52, Exhibits I, J, K, L, M, N).

On October 16, 2006, a letter was sent by Plaintiff's attorney to Defendant, stating that Plaintiff was "ready, willing, and able to close the sale" of the property (Doc. 52, Exhibit U).  Swervo's President responded, by letter three days later, by requesting "an updated title commitment and ALTA survey" as well as information regarding the resolution of the issues between Plaintiff and its seller and "documentation of such;" the letter further stated that "[a]ny issues need to be resolved prior to our closing" (Doc. 52, Exhibit P).  On October 23, 2006, Plaintiff's attorney, in a letter to Swervo, stated that the updated title commitment and a copy of the current land survey were being overnighted; the letter went on to say that his "client's obligations are to deliver a warranty deed and title policy, and as long as [his] clients are able to do so (and they are), there is no obligation to provide [Swervo] with documentation of the resolution of those issues" (Doc. 52, Exhibit Q).  On October 23, 2006, Gulf Shores Title Co., Inc., sent an updated title commitment and a copy of the survey to Swervo (Doc. 52, Exhibit BB).

3

On October 25, Plaintiff's attorney sent the following message, by e-mail, to Swervo's president: "You should have received yesterday the updated title commitment and the current land survey. Attached is the dismissal filed in the litigation with the sellers evidence [sic] that we have resolved our dispute. What is your preferred date to close?" (Doc. 52, Exhibit E). Attached to that exhibit is a copy of a "Joint Notice of Voluntary Dismissal," filed with the Alabama Supreme Court, in the action between 161 Perdido and the Oswalt Family (*id.*). Plaintiff's attorney then sent another letter, dated October 31, 2006, to Swervo, stating that he had provided all requested information and had received no response to its prior letter; the letter informed Swervo of a scheduled closing date of November 15, 2006 (Doc. 52, Exhibit Y).

Plaintiff commenced this action on November 17, 2006 in the Baldwin County Circuit Court (Doc. 1, Exhibit B). In a letter dated December 7, 2006, Swervo's attorneys acknowledged the lawsuit, explained why it was unfounded, and demanded that it be dismissed (Doc. 52, Exhibit Z). Plaintiff's attorney responded, by letter dated December 27, with a copy of an agreement between the Oswalt Family and 161 Perdido giving Plaintiff the option to purchase the property in this action through January 31, 2007; the letter stated that if Swervo was not "ready, willing, and able to close within that time period, the possibility of

resolving this dispute by Swervo's closing on the purchase will be non-existent" (Doc. 52, Exhibit AA).  On that same date, Defendant removed the Baldwin County action to this Court (Doc. 1).

In a letter dated December 29, 2006, Defendant's local attorney informed Plaintiff's attorney that he had received his last letter, but that certain defects had not been timely cured by the Seller and that a home which had been on the property was no longer there, so Swervo would not purchase the property (Doc. 52, Exhibit E).  On that same date, Defendant filed a Cancellation of the Purchase Agreement with the Baldwin County Circuit Court, which had been filed on June 21, 2004, as it was null and void or had been terminated (Doc. 52, Exhibit T).

A summary of the legal proceedings which have occurred so far in this action follows.  Plaintiff brought this action in the Baldwin County Circuit Court on November 17, 2006 against Swervo, raising claims of breach of contract, slander of title, promissory fraud, and tortious interference (Docs. 1, Exhibit B; Doc. 28); Plaintiff seeks compensatory damages of $850,000 plus an unspecified amount of punitive damages (Doc. 28).  Defendant removed this action to this Court on December 27, 2006, asserting diversity jurisdiction (Doc. 1).  Defendant subsequently filed a Motion for Summary Judgment, seeking to have all claims against it dismissed (Docs. 51-53); 161 Perdido has Responded to the

Motion (Docs. 55-56)[3] to which Swervo has Replied (Doc. 59).

The Rules of Civil Procedure, in discussing summary judgment, state that

> an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e); *see also Celotex Corporation v. Catrett*, 477 U.S. 317, 325-27 (1986).  The Court further bears in mind, with regard to the motion for summary judgment, that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations omitted). Summary judgment may be granted against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at

---

[3] Plaintiff stated that it did "not oppose Defendant's Motion for Summary Judgment with respect to Counts 2 and 4 of Plaintiff's Amended Complaint" (Doc. 55, p. 1 n.1).  With this concession, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's claims of slander of title and tortious interference; those claims are **DISMISSED** (Docs. 51-53).

trial. *Id.*

In the first count of the complaint, 161 Perdido raises the claim that Defendant breached a contract for purchase of real property at a price of $7.5 million (Doc. 28, ¶¶ 1-5). Though Plaintiff was "ready, willing, and able to close the sale, [] Defendant breached its obligations" to purchase the property which was to occur "not later than November 15, 2006" (*id.* at ¶¶ 3-5).

In its Motion, Swervo admits that the Parties entered into a Purchase Agreement for real property in May 2004, but asserts that Plaintiff was unable to fulfill the terms of that contract as it did not own the property in question at the time of the contemplated closing. Defendant further asserts that although the Parties negotiated further regarding the property, no contract was finalized (Doc. 52, pp. 4-17).

Swervo's main argument is that no agreement was reached between the parties as governed by the Alabama Statute of Frauds (Doc. 52, pp. 6-17). Under Alabama law,[4]

> every agreement is void unless such agreement
> or some note or memorandum thereof expressing
> the consideration is in writing and
> subscribed by the party to be charged
> therewith or some other person by him
> thereunto lawfully authorized in writing:

---

[4] In this action, Alabama law controls. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

>  \*\*\*
>
>  (5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller;

Ala. Code § 8-9-2 (1975). The Alabama Supreme Court has specifically held that "[o]ral promises for the sale of 'lands, tenements or hereditaments, or of any interest therein,' are inherently suspect, and the Statute of Frauds prohibits the enforcement of such a promise even though both parties acknowledge the existence of the oral agreement." *Rentz v. Grant*, 934 So.2d 368, 373 (Ala. 2006) (citing *Darby v. Johnson*, 477 So.2d 322, 326-27 (Ala. 1985)). The Alabama Supreme Court has also held that a material modification[5] to a contract for the purchase of land must be in writing and signed as well. *Gewin v. TCF Asset Management Corp.*, 668 So.2d 523, 527 (Ala. 1995).

The evidence clearly shows that the Purchase Agreement of May 2004 is not valid for purposes of this action (*see* footnote 2). Furthermore, the Court notes that Plaintiff, in its Response to Defendant's Motion for Summary Judgment, sets out the facts relevant to this action in chronological order (*see* Doc. 55, ¶¶

---

[5] A specific example of a nonmaterial modification would be an extension of time for the contract to be executed. *See Cammorata v. Woodruff*, 445 So.2d 867, 872 (Ala. 1983).

2-27).  In paragraph fifteen, 161 Perdido references a letter of March 10, 2005 (Doc. 55, ¶ 15); in paragraph seventeen, Plaintiff references e-mail correspondence dated April 11, 2006 (Doc. 55, ¶ 17).  Yet, in paragraph sixteen, Plaintiff states the following: "Plaintiff and Defendant then tried unsuccessfully to negotiate a settlement of their dispute" (Doc. 55, ¶ 16).  This shows 161 Perdido's acknowledgment that there was no agreement before, at the earliest, April 11, 2006.

    The Court has reviewed the correspondence between the Parties beyond the May 2004 Purchase Agreement and is unable to verify that there was ever a meeting of the minds on a new contract for sale.  Certainly, to the extent that there was an agreement, it fails to meet the requirements of the Alabama Statute of Frauds.  Plaintiff has failed to point this Court to any document, or series of documents, which shows that 161 Perdido and Swervo had a written, signed agreement regarding the sale and purchase of property.  The Court further notes that the exception to the Statute is inapplicable here as there is no apparent dispute that Swervo did not pay a portion of the purchase price and never took possession of the property.  *See Rentz*, 934 So.2d at 373; *see also* Ala. Code § 8-9-2(5).

    The Court finds that Plaintiff has failed to demonstrate that Defendant has breached a contract as it has failed to demonstrate that a contract existed under the requirements of

Alabama statutory law.  Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiff's breach of contract claim. This claim will be **DISMISSED**.

Plaintiff has also raised a claim of promissory fraud against Defendant.  In *Gewin*, the Alabama Supreme Court held the following:

> "[I]n order to establish promissory fraud, a plaintiff must show:  (1) a false representation; (2) of an existing material fact; (3) that is justifiably relied upon; (4) damage resulting as a proximate cause; and that, (5) at the time of the misrepresentation, the defendant had the intention not to perform the promised act and (6) that the defendant had an intent to deceive."

*Gewin*, 668 So.2d at 526 (quoting *Pinyan v. Community Bank*, 644 So.2d 919, 923 (Ala. 1994)).  The Court notes that, under Alabama law, Swervo's failure to perform as 161 Perdido alleges it promised it would is "insufficient by itself to prove a fraudulent intent."  See *Gewin*, 668 So.2d at 526 (quoting *Pinyan*, 644 So.2d at 924).

Plaintiff, in the Amended Complaint, states the following: "On or about August 17, 2004, Defendant willfully and maliciously misrepresented its intention to purchase the above-described real property with the intent to induce Plaintiff to act thereon" (Doc. 28, ¶ 10).  The letter to which Plaintiff refers is Swervo's response, to 161 Perdido's demand letter, that it would

not withdraw its recording of the May 2004 Purchase Agreement with the Baldwin County Probate Court (see Doc. 55, p. 33).

The Court has reviewed all of the evidence of record and finds no support for 161 Perdido's claim of promissory fraud. Plaintiff has failed to demonstrate that Swervo's August 17, 2004 letter demonstrates anything other than a desire to purchase property which Plaintiff had indicated that it could make available (see Doc. 55, Exhibit p. 33).  Likewise, although there have been assertions otherwise, 161 Perdido has not pointed to anything which indicates that Defendant was misleading them in their negotiations.  Therefore, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Plaintiff's claim of promissory fraud.  This claim will be **DISMISSED**.

In summary, after reviewing all of the evidence of record, the Court finds that Plaintiff has failed to set forth specific facts which demonstrate triable issues on the claims which have been raised in this action.  Therefore, the Court **GRANTS** Defendant Swervo's Motion for Summary Judgment as to all claims (Docs. 51-53).  All claims raised in this action are **DISMISSED**. Judgment will be entered by separate Order.

DONE this 16th day of November, 2007.


                                    s/BERT W. MILLING, JR.
                                    UNITED STATES MAGISTRATE JUDGE